In re AVI, INC., Debtor.

Woods & Erickson, LLP, Appellant,

v.

William A. Leonard, Chapter 7 Trustee, Appellee.

BAP No. NV–07–1266–JuKPa.
Bankruptcy No. 04–14779–LBR.
Adversary No. 06–01121–LBR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 21, 2008.

Filed June 13, 2008.

Brian C. Whitaker, Woods Erickson Whitaker & Maurice LLP, Henderson, NV, for appellant.

Lenard E. Schwartzer, Schwartzer & McPherson Law, Las Vegas, NV, for appellant.

Before: JURY, KLEIN and PAPPAS, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge.

This appeal is from a $38,354.30 judgment rendered under 11 U.S.C. § 550(a)(1) and (2)[1] against a transferee of unauthorized postpetition transfers avoidable under § 549. During the postpetition period, appellant law firm, Woods & Erickson ("W & E"), received an unauthorized legal fee and later assisted the debtor in selling what it knew to be an undisclosed asset for $1 million and received some of the proceeds from the transferee for payment of further fees.

W & E, among other arguments, assigns error to the bankruptcy court's ruling that a trustee may recover from a subsequent transferee under § 550 without having separately avoided the transfer to the initial transferee. This is a matter of first impression in the Ninth Circuit upon which two other circuits are divided. We hold that a trustee, subject to the requirement of establishing avoidance, may prosecute an action to recover from a subsequent transferee under § 550 without having earlier avoided the initial transfer. Additionally, the court did not err in rul-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, because the case from which this appeal arises was filed before its effective date (generally October 17, 2005).

ing that it had jurisdiction and that W & E did not act in good faith without knowledge of avoidability of the several transfers. Accordingly, We AFFIRM.

## I. FACTS

The debtor, AVI, Inc., a wholly owned subsidiary of Air Vegas Enterprises, Inc. ("AVEI"), operated an air sightseeing business flying over the Grand Canyon.[2] It filed a chapter 11 case on April 30, 2004, in the face of apparent discord between James Petty, who owned forty-seven percent of AVEI, and Philip and Wayne Hoffman, who owned forty-nine percent. The debtor owed delinquent aircraft lease payments to Pacific Aircraft Finance, LLC ("PAF"), of which entity the Hoffmans were officers and directors.

Appellant W & E, which had represented both AVEI and debtor, with the assistance of attorney James Swindler, prepared debtor's chapter 11 petition and schedules and represented debtor when they were filed. The schedules omitted debtor's ownership of transferrable intangible Grand Canyon flight allocations issued by the Federal Aviation Administration. The certificate owned by debtor authorized it to conduct a total of 5927 commercial air tours in the Grand Canyon National Park Special Flight Rules Area during each calendar year.

On May 18, 2004, W & E moved to withdraw as attorney of record for debtor on account of a conflict of interest predating the filing of the chapter 11 case. The court authorized W & E's withdrawal by order entered June 22, 2004. Thereafter, James Swindler and the firm of Allf Paustian & Szostek represented AVI.

■ Soon after the case was filed, PAF and the Hoffmans attacked debtor on several fronts. One theory involved PAF's aircraft equipment lease rights under § 1110[3] with respect to nine C–99 Beechcraft aircraft. A global settlement was reached, whereby debtor had the choice of either curing the PAF lease defaults and continuing to operate or returning the aircraft to PAF and presumably going into liquidation mode. The settlement parties addressed potential dismissal of the case by providing that, as relevant here, PAF and the Hoffmans would "support" a request for dismissal if the aircraft were surrendered and certain payments made.[4]

---

**2.** As the parties did not supply a comprehensive record, we have exercised our discretion to examine the bankruptcy court's docket and imaged papers in Case No. 04–14779 and related adversary proceedings. *Atwood v. Chase Manhattan Mortgage Co. (In re Atwood),* 293 B.R. 227, 233 n. 9 (9th Cir. BAP 2003); *Omoto v. Ruggera (In re Omoto),* 85 B.R. 98, 100 (9th Cir. BAP 1988).

**3.** This section entitled "Aircraft equipment and vessels" generally provides, with certain exceptions, that the rights of an aircraft equipment lessor such as PAF to take possession of its equipment in compliance with the lease and enforce any of its other rights or remedies under the lease is not limited by the provisions in the Code or by any power of the court. Thus, absent a timely cure of any default, a lessor may recover aircraft equipment prior to any formal assumption or rejec-

tion of the lease, and unimpeded by the automatic stay. The statute provides for a sixty-day cure period for defaults under a lease. *See* § 1110.

**4.** The Settlement Agreement provided:

*Dismissal.* After the Forbearance Termination Date, and in the event the Settlement Payment has not been paid to PAF, then PAF will support any request of the Debtor to dismiss the Bankruptcy Case, provided that contemporaneous with dismissal, PAF is indefeasibly paid $128,000 in full satisfaction of the Lease Administrative Claim, without prejudice to its other surviving claims, and further provided the Debtor has surrendered the Aircraft and all Adequate Protection Payments have been made.

Settlement Agreement, § 2.12.

Despite the settlement provision about dismissal, the motion to approve the compromise that was sent to all creditors, which the court approved on September 20, 2004, did not refer to the possibility of dismissal based on debtor's surrender of the aircraft.

Without giving notice to PAF or anyone else, debtor's attorney submitted a proposed order of dismissal, accompanied by a declaration of James Petty averring that the aircraft had been surrendered and the other conditions of the settlement satisfied. The court, without requiring notice to anyone and without assessing whether the interests of creditors and the estate favored conversion over dismissal, entered the order of dismissal on October 25, 2004.

After dismissal of debtor's case, W & E assisted debtor in the sale of the flight allocations and related intangibles to Maverick Helicopters for $1 million without court authority in a transaction dated November 8, 2004. The transaction closed about November 22, 2004, and W & E was paid $32,808.78 for fees from the proceeds.[5]

Prior to the sale, on November 4, 2004, PAF filed a motion seeking to have the dismissal vacated, asserting that the dismissal papers had amounted to a fraud on the court because notice to PAF had been intentionally omitted and the conditions of the settlement had not been satisfied, nor had the aircraft been surrendered within the meaning of the settlement agreement.[6] By operation of Rule 8002(b)(4),[7] this motion tolled the time in which to appeal the dismissal order. PAF's motion was eventually granted on January 13, 2005, after the court concluded that the dismissal order was fatally defective for due process reasons. The order, which vacated and annulled the dismissal order and reinstated the case, was not appealed by W & E or anyone else.

W & E received notice of PAF's motion challenging the dismissal on or about November 5, 2004. Nevertheless, W & E, which asserts that it took care to satisfy itself that the chapter 11 case was dismissed, proceeded to assist in the sale of the flight allocations.

After the dismissal order was annulled, appellee William A. Leonard became the chapter 11, and then chapter 7, trustee. He commenced an adversary proceeding against Maverick Helicopters to avoid the transfer of the flight allocations as an unauthorized postpetition transfer under § 549. *Leonard v. Maverick Helicopters, Inc.*, Adv. No. 06–01122–LBR (filed April 28, 2006). Simultaneously with filing the Maverick Helicopters avoiding action, the trustee filed five other actions to avoid and recover various transfers, including the action against W & E that is the subject of this appeal.[8] A number of intertwined

---

5. In addition, W & E had received $5,839.00 from debtor as payment for legal fees on April 30, 2004, without having been authorized to be employed as counsel pursuant to § 327 and without the court having authorized payment of fees.

6. PAF's motion for "reconsideration" of the dismissal order invoked Fed.R.Civ.P. 60(b)(3) and (6), which permit the court to relieve a party from a final order on account of: "(3) fraud ..., misrepresentation, or misconduct by an opposing party; ... or (6) any other reason that justifies relief." Fed.R.Civ.P. 60(b), *incorporated by* Fed. R. Bankr.P. 9024.

7. Rule 8002(b)(4) provides: "If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion: ... (4) for relief under Rule 9024 if the motion is filed no later than 10 days after the entry of judgment." Fed. R. Bankr.P. 8002(b)(4).

8. The other actions were: *Leonard v. Richfield Props., LLC*, Adv. No. 06–01118; *Leonard v. Sid Petty Family Tr.*, Adv. No. 06–01119; *Leonard v. Vista Airlines, Inc.*, Adv. No. 06–

counterclaims, cross-claims, and third-party complaints ensued.

Maverick Helicopters and Petty ultimately settled with the trustee as part of a larger settlement that included some, but not all, of the other parties. The settlement was reached in October 2007 and approved by the court as fair and equitable by order entered February 4, 2008. W & E did not participate in the settlement.

Before the trustee's avoidance action against Maverick Helicopters was settled, the action against W & E proceeded to trial on the count to avoid transfers under § 549 and to recover under § 550. W & E conceded that the $5,839.00 postpetition transfer to it on April 30, 2004, was avoidable under § 549 and recoverable under § 550(a)(1).[9] The court determined in favor of W & E with respect to one other transfer. Finally, the court found that the trustee "met his burden" to demonstrate avoidance of the sale to Maverick Helicopters under § 549 and proceeded to address the consequent § 550 issues.

The court found that W & E was a transferee of funds from the sale of the flight allocations because the payment to W & E was traceable to the proceeds of that sale. Specifically, debtor immediately transferred the sale proceeds received from Maverick Helicopters to AVEI, which had only $1,700 in the relevant bank account, and AVEI transferred $32,808.78 to W & E.

The court also found that W & E was aware of the existence of the flight allocations at the time that it omitted them from schedules W & E prepared and filed and, in addition, found that W & E was aware of the potential avoidability of the transfer and of the pending motion to reconsider the dismissal at the time of the Maverick Helicopter transaction. Thus, it rejected W & E's defenses of good faith, lack of knowledge, and inequitable victimization.

■ Judgment was entered against W & E for $38,354.30, plus prejudgment interest.[10] W & E timely appealed.[11]

## II. JURISDICTION

The bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. § 1334 over this core proceeding under § 157(b)(2)(E) and (H). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court abused its discretion in annulling the dismissal order and declining to insulate the sale from avoidance.

B. Whether a trustee, subject to the requirement of establishing avoidance, may prosecute an action to recover from a subsequent transferee under § 550 without having earlier avoided the initial transfer.

---

01120; *Leonard v. James W. Petty,* Adv. No. 06–01123.

9. This transfer is not at issue in this appeal.

10. Although the calculation of the precise sum is not obvious, any issue in that respect has been waived because the amount of the judgment has not been questioned on appeal.

11. The trustee also alleged that the transfers could be avoided under § 544, which question was left open. The court made a Fed.

R.Civ.P. 54(b) certification so that this appeal would be an appeal as of right from a final judgment under 28 U.S.C. § 158(a)(1), rather than a discretionary interlocutory appeal under § 158(a)(3). Fed.R.Civ.P. 54(b), *incorporated by* Fed. R. Bankr.P. 7054. While we could consider the appeal in either event, the subsequent jurisdiction of the court of appeals is affected by whether the underlying judgment is final or interlocutory. 28 U.S.C. §§ 158(d) & 1291–92.

C. Whether the bankruptcy court erred in finding that W & E did not prove its good faith defense under § 550(b).

## IV. STANDARDS OF REVIEW

■ We review the bankruptcy court's decision to vacate an order of dismissal under the abuse of discretion standard. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1086–87 (9th Cir.2000).

■ We review issues of statutory construction and conclusions of law de novo. *Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799, 802 (9th Cir. BAP 2007).

■ We review factual findings such as those involved in a good faith determination for clear error. *Figter Ltd. v. Teachers Ins. & Annuity Ass'n of Am. (In re Figter, Ltd.)*, 118 F.3d 635, 638 (9th Cir. 1997).

## V. DISCUSSION

■ Bankruptcy Code § 549 authorizes the trustee to avoid a transfer of estate property that occurs after the commencement of the case.[12] The trustee's prima facie case requires proof of a transfer (1) of estate property; (2) that occurred after the commencement of the case; and (3) that was not authorized by statute or the court. *Vasquez v. Mora (In re Mora)*, 218 B.R. 71, 73 (9th Cir. BAP 1998). Once the trustee establishes a prima facie case, to the extent that a transfer is avoided under § 549, the trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the initial transferee or any subsequent transferee. *See* § 550(a)(1) and (2).[13]

Rule 6001 allocates the burden of proof regarding the validity of the transfers under § 549 to W & E. Fed. R. Bankr.P. 6001.[14]

W & E assigns error to the bankruptcy court's ruling on several grounds. First, W & E contends the bankruptcy court lacked jurisdiction over debtor's property once its case was dismissed. Therefore, W & E argues, the court could not order the avoidance of transfers of debtor's property that was no longer property of debtor's estate. W & E also maintains that it was deprived of due process when the bankruptcy court reinstated the case, as if there had been no dismissal, on the premise that it had no notice of the order vacating the dismissal when it negotiated the sale of debtor's flight allocations. Next, W & E contends the court erred as a matter of law in finding that the trustee could recover a transfer from a subsequent transferee, such as W & E, without first avoiding the debtor's initial transfer to Maverick Helicopters. Finally, W & E asserts the court erred in finding W & E did not prove its good faith defense because it was unaware of the avoidability of the transfers.

---

**12.** Section 549 provides: "(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate-(1) that occurs after the commencement of the case; and (2).... (B) that is not authorized under this title or by the court."

**13.** Section 550 provides: "(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer ...; or (2) any immediate or mediate transferee of such initial transferee."

**14.** Rule 6001 provides: "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Fed. R. Bankr.P. 6001.

We address each of these arguments below.

## A. Lack of Jurisdiction Defense

■ We reject W & E's argument that the court erred in retroactively vacating the dismissal because, as a matter of law, the court lost its jurisdiction over estate property during the interval between the entry of its order of dismissal and the entry of its order vacating and annulling the dismissal.[15]

### 1. The Dismissal Did Not Comply With the Statutory Requirements

■ Dismissal of a chapter 11 case must meet procedural and substantive requirements. Procedurally, § 1112(b) requires notice and a hearing. *See* § 1112(b).[16] Substantively, § 1112(b) establishes "a two-step analysis for dealing with questions of conversion and dismissal." *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006). The first step is a determination whether cause exists for conversion or dismissal. The second step requires the court to apply a "balancing test" to choose between conversion and dismissal based upon the "best interests of the creditors and the estate." *Id.*

Neither the procedural nor substantive requirements of § 1112(b) were met when the court dismissed the case. The debtor and PAF intended that the original compromise motion would give the necessary notice regarding dismissal. However, the notice that was given referred only to a

dismissal following the debtor's payment of $3.2 million pursuant to the first alternative in the settlement, which did not occur. Moreover, the motion to approve the settlement did not refer to the possibility of dismissal based upon debtor's surrender of the aircraft. The order approving the settlement did not refer specifically to the possibility of dismissal and was not served on all parties in interest until December 8, 2004, when debtor's counsel discovered that it had not been previously served. The ex parte motion to dismiss was not noticed to anyone nor was the dismissal order served on all parties in interest. Finally, even though § 1112(b) requires the court to choose between conversion and dismissal, whichever is in the best interests of creditors and the estate, the court did not make this analysis before dismissing the case on the debtor's ex parte motion.

### 2. The Dismissal Order Was Subject To Reconsideration

■ After ruling on and entering a dismissal order, bankruptcy courts have the equitable power to revisit the order by way of reconsideration. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir.2007). This equitable power has been formalized in Rule 9024, which makes Fed. R.Civ.P. 60(b) applicable in cases under the Code. *Id.; see also Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 66 (6th Cir.BAP2004) (bankruptcy

---

**15.** Section 349 addresses the effect of dismissal of a bankruptcy case. Generally, the purpose of the statute is to restore all property rights to their prepetition status. *Aheong v. Mellon Mortgage Co. (In re Aheong)*, 276 B.R. 233, 239 (9th Cir. BAP 2002). Accordingly, upon dismissal, estate property such as debtor's flight allocations is revested in the debtor. *See* § 349(b)(3).

**16.** Section 1112(b) provides in relevant part: "[O]n request of a party in interest ..., and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause...."

court authorized to set aside a final judgment or order including case dismissal orders under Rule 9024).

■ The Ninth Circuit has observed that the court's discretion to revisit past orders is broad in the absence of "vested" rights. *Int'l Fibercom*, 503 F.3d at 944. Moreover, Fed.R.Civ.P. 60(b) conditions all relief on "such terms as are just" which is understood to implicate equitable principles. 11 Wright & Miller, *Fed. Prac. & Proc.* § 2857. The application of equitable principles includes the question whether intervening equities make relief inappropriate, which is often couched in terms of whether "prejudice" would result from granting relief. *Id.* at nn. 5–6; *see also In re Staff Inv., Co.,* 146 B.R. 256, 263 (Bankr.E.D.Cal.1993) ("Intervening equities, potential hardship to other persons, and prejudice to a party can vitiate an otherwise strong argument" for Rule 60 relief).

■ While W & E has framed the issue as "jurisdictional," the real issue is whether the bankruptcy court abused its discretion by declining to insulate the $1 million sale from avoidance following the grant of PAF's Fed.R.Civ.P. 60(b) motion.

Applying the conventional Fed.R.Civ.P. 60 analysis to the present appeal, the first question is whether PAF's motion was brought within a "reasonable" time; it plainly was "reasonably" timely, having been filed within ten days of the entry of the dismissal order, and operated under Rule 8002(b)(4) to toll the time in which to appeal. The next question is whether intervening equities make vacating the dismissal inappropriate, to which the answer is easily in the negative. There could be no detrimental reliance when W & E acted to complete the $1 million transaction with knowledge of PAF's pending motion to vacate the dismissal order based upon allegations of fraud by persons aligned with W

& E. *See Slyman*, 234 F.3d at 1087; *Great Pac. Money Markets, Inc. v. Krueger (In re Krueger)*, 88 B.R. 238 (9th Cir. BAP 1988). Moreover, although the bankruptcy court made no explicit findings of fraud, it found that W & E was aware of the existence of the flight allocations at the time it omitted them from the schedules that it prepared and filed. Accordingly, the bankruptcy court did not abuse its discretion by annulling the dismissal.

While W & E's reliance upon *Sewell v. MGF Funding, Inc. (In re Sewell)*, 345 B.R. 174 (9th Cir. BAP 2006), for its position is inapposite, the facts and holding of *Sewell* nonetheless fit within conventional Fed.R.Civ.P. 60 analysis. In *Sewell*, the court dismissed debtors' chapter 13 case because they failed to file required documents. Debtors later filed the missing documents together with a motion to reinstate the case. After the court signed the reinstatement order, but before it was entered on the docket, a foreclosure sale of the debtors' home was completed.

The *Sewell* debtors moved to set aside the foreclosure sale. The purchasers of the home filed a stay relief motion and sought to validate the trustee's sale. The debtors advanced two theories in support of their set aside motion. First, they reasoned if the automatic stay was effective immediately upon the filing of a petition, then the automatic stay should also be effective as soon as the reinstatement order is signed, not entered. Second, they argued that the terms of the reinstatement order meant that the effects of the dismissal were also set aside, as if the automatic stay had never terminated. After weighing the equities, the bankruptcy court found that the reinstatement order was not effective until entered on the docket, based primarily on lack of notice to the affected parties. The bankruptcy court

granted the purchasers' stay relief motion and denied debtors' set aside motion.

The Panel affirmed, ruling that the bankruptcy court had discretion to defer reimposing the stay in fairness to other parties in interest, just as it had discretion to grant retroactive relief from the automatic stay.[17] *Id.* at 179. Thus, although Fed.R.Civ.P. 60 is not mentioned in *Sewell,* the court applied equitable principles by considering the intervening equities that made debtors' request for relief inappropriate.

■ Moreover, to the extent that W & E seeks to collaterally attack the validity of that order vacating and annulling the dismissal, it cannot do so in this appeal because the order is final and the time to appeal has passed.

■ In sum, we conclude the bankruptcy court did not abuse its discretion in retroactively vacating the effects of the dismissal of debtor's case based upon debtor's failure to give proper notice of its request that is required under § 1112(b) and the lack of intervening equities that favored W & E. Therefore, once the court annulled the dismissal order, debtor's flight allocations were restored to their status as property of the estate as of October 25, 2004. Their subsequent sale without court authorization rendered the transfer vulnerable to the trustee's avoidance powers under § 549, and the bankruptcy court clearly had jurisdiction over that avoidance action.

### B. Lack of Notice Defense

■ We reject W & E's contention that its due process rights were violated on its theory that it did not have notice of the order vacating the dismissal when it

proceeded with the negotiations and sale in reliance upon the dismissal order. Contrary to W & E's assertions regarding its lack of involvement in debtor's case, however, it was not an innocent bystander without notice. When W & E proceeded with the negotiations and sale of debtor's flight allocations, it had been served with notice of PAF's timely motion for reconsideration. Nothing prevented W & E from participating in the reconsideration hearing or taking other steps to protect its position. *See Mullane v. Cent. Hanover Bank & Trust, Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (notice reasonably calculated under all the circumstances to apprise the party of the pendency of the action and afford an opportunity to present objections is consistent with due process). Thus, W & E's knowledge of a dispositive motion prior to the sale of debtor's flight allocations sufficed as notice that the court might vacate the dismissal order and restore the parties to the positions they occupied before the dismissal. Put simply, W & E's due process rights were not violated under the circumstances here.

### C. Failure to Recover From the Initial Transferee Defense

The bankruptcy court ruled that the trustee did not need to avoid the initial transfer from debtor to Maverick, or other prior transferees, before seeking recovery under § 550(a) from W & E. It relied upon the analysis articulated in *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network),* 332 B.R. 896, 914–916 (Bankr. D.Nev.2005) (Markell, J.), for its decision. W & E contends the court erred in its ruling as a matter of law. We agree with the *Nat'l Audit* analysis.

---

**17.** The reinstatement order at issue in *Sewell* had none of the "annulled" language found in the Vacate Order here.

In a scholarly decision, the *Nat'l Audit* court relied upon the Eleventh Circuit's 2005 decision that § 550(a) "does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.),* 408 F.3d 689, 708 (11th Cir.2005) (*"Int'l Admin. Servs."*); *Nat'l Audit,* 332 B.R. at 915–16.

The Eleventh Circuit in *Int'l Admin. Servs.* particularly relied on Judge Schwarzer's *Richmond Produce* decision resolving a Northern District of California bankruptcy appeal, which held that a trustee who demonstrates that a transfer is avoidable "may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer is made" and which explained that an interpretation of § 550 mandating actual avoidance of initial transfers "conflates [the Bankruptcy Code's] avoidance and recovery sections." *Kendall v. Sorani (In re Richmond Produce),* 195 B.R. 455, 463 (N.D.Cal.1996) (Schwarzer, J.), *quoted with approval, Int'l Admin. Servs.,* 408 F.3d at 706; *accord, Durkin v. Shields (In re Imperial Corp. of Am.),* 1997 WL 808628, at *4 (S.D.Cal.1997); *Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.),* 220 B.R. 331, 335–38 (Bankr.W.D.Tex.1998). Judge Markell was persuaded by, and adopted, the *Int'l Admin. Servs.* and *Richmond Produce* analyses. *Nat'l Audit,* 332 B.R. at 916.

The contrary line of authority upon which W & E relies is based on a divided 1992 decision of the Tenth Circuit that interpreted § 550 to require a trustee to avoid the transfer to the initial transferee before proceeding against subsequent transferees. *Weinman v. Simons (In re Slack–Horner Foundries Co.),* 971 F.2d 577, 580 (10th Cir.1992) (2–1 decision)

(*"Slack–Horner"*); *Enron Corp v. Int'l Fin. Corp. (In re Enron Corp.),* 343 B.R. 75, 79–80 (Bankr.S.D.N.Y.2006); *Greenwald v. Latham & Watkins (In re Trans–End Tech., Inc.),* 230 B.R. 101, 104 (Bankr. N.D.Ohio 1998).

Thus, the two courts of appeals that have analyzed the issue have reached diametrically different conclusions. In the absence of a controlling Ninth Circuit decision, we agree with the analyses in the Eleventh Circuit's *Int'l Admin. Servs.* decision, Judge Schwarzer's *Richmond Produce* decision, and Judge Markell's *Nat'l Audit* decision.

Section 550(a) provides that "to the extent a transfer is avoided under section ... 549 ... the trustee may recover ... the value of such property from—(1) the initial transferee ... or (2) any immediate or mediate transferee...."

**■** As with all issues of statutory interpretation, we begin with the words of the statute; if they are clear, we must apply the statute by its terms unless to do so would lead to absurd results. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). We look not only to the language of the statute, but also to "the specific context in which the language is used, and the broader context of the statute as a whole." *Hough v. Fry (In re Hough),* 239 B.R. 412, 414 (9th Cir. BAP 1999) (citation omitted). Given the number of courts expressing divergent views about the statute's proper interpretation, we might conclude that § 550(a) is indeed ambiguous. However, we review the statute anew to determine whether an ambiguity exists.

One question is whether the qualifier "to the extent that a transfer is avoided" in the preambular portion of § 550(a) has implications for whether there must be a prior avoidance action. A narrow plain

language debate can be found in the bankruptcy court decisions in *Crafts Plus +* and *Enron*. The *Crafts Plus +* court reasoned that the term "is avoided" is in present perfect tense in concluding that there is no requirement of a temporally antecedent avoidance. In *Enron*, the opposite conclusion was reached by construing the word "avoided" as being in the past tense. *Compare Crafts Plus +*, 220 B.R. at 335, *with Enron*, 343 B.R. at 81 & n. 3.

We must take into account that the Ninth Circuit has construed § 550(a)'s "to the extent" language does not provide a defense to a transferee, but rather "simply recognizes that transfers sometimes may be avoided only in part, and that only the avoided portion of the transfer is recoverable." *Official Unsecured Creditors Comm. v. U.S. Nat'l Bank (In re Sufolla, Inc.)*, 2 F.3d 977, 982 (9th Cir.1993). This, however, does not answer the question whether there must be a prior avoidance determination.

The prior avoidance question was directly confronted by Judge Schwarzer in *Richmond Produce*, where, reasoning from *Sufolla* and the language of § 550(a), he rejected the contention that the trustee was required to have successfully avoided the transfer to the initial transferee (who had been discharged in his own bankruptcy) before proceeding against a subsequent transferee. It was sufficient that the trustee prove in the action against the subsequent transferee that the transfer was avoidable. *Richmond Produce*, 195 B.R. at 463, *aff'g* 151 B.R. 1012, 1016 n. 5 (Bankr.N.D.Cal.1993). Judge Schwarzer specifically rejected the Tenth Circuit's *Slack–Horner* decision as "unpersuasive in light of contrary holdings in this circuit and Judge Seymour's telling dissent in *Slack–Horner* itself." *Richmond Produce*, 195 B.R. at 463 n. 6; *accord, Richmond*

*Produce*, 151 B.R. at 1016 n. 5 (*Slack–Horner* "not persuasive").

Moreover, the legislative history of § 550(a) indicates that the qualifying language "to the extent that" was designed to incorporate the protection of transferees in §§ 549(b) and 548(c) and simply recognizes that transfers sometimes may be avoided only in part, and only that part is recoverable. *Sufolla*, 2 F.3d at 982; *Richmond Produce*, 195 B.R. at 463; *Crafts Plus +*, 220 B.R. at 335.

A provision that may seem ambiguous in isolation is often clarified when only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (statutory construction is a holistic endeavor). Therefore, we do not view § 550 in isolation and examine the statutory framework for avoidance and recovery actions.

■■■ The concepts of avoidance and recovery are separate and distinct. *Sufolla*, 2 F.3d at 982; *Lippi v. City Bank*, 955 F.2d 599, 605 (9th Cir.1992); *Richmond Produce*, 195 B.R. at 463; S.Rep. No. 95–989, at 90 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876; H.R.Rep. No. 95–595, at 375–76 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6331.

Section 549, which addresses postpetition transfers, focuses on the transfer and contains nothing that defines the proper defendant. Avoidability is an attribute of the transfer and not the party. *Richmond Produce*, 195 B.R. at 463 *citing Sufolla*, 2 F.3d at 982; *Int'l Admin. Servs.*, 408 F.3d at 707 ("[T]he distinction between initial transferee and mediate transferee for avoidance purposes is irrelevant[;] defendants need only be transferees."); *Crafts Plus +*, 220 B.R. at 338 ("§ 547 focuses exclusively on the transfer, not the credi-

tor or beneficiary"). There is also nothing in § 549 that links the trustee's avoidance power to recovery from the transferees.[18]

That the concepts are distinct and separate statutory remedies is also supported by their separate statute of limitation periods. Section 549(d) provides that an action under that section may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed. The statute of limitation in § 549 relates only to the transfer and not the transferee. Notably, the statute does not refer to the "initial" transfer.

Section 550(f) provides that an action or proceeding under § 550 may not be commenced after the earlier of—(1) one year after the avoidance of the transfer ... or (2) the time the case is closed or dismissed. Thus, while § 550(f)(1) indicates that the statute of limitations commences "after the transfer is avoided" it, too, does not state "after the *initial* transfer is avoided."

Because Congress made the concepts of avoidance and recovery separate and distinct, we are persuaded that the trustee need not first avoid a transfer from the initial transferee when seeking recovery from a subsequent transferee under § 550. *See Int'l Admin. Servs.*, 408 F.3d at 706 (observing that "[a]n interpretation of § 550 mandating actual avoidance of initial transfers 'conflates ... avoidance and recovery sections' "). Under this view, we perceive no impediment to giving effect to the different statutes of limitations for avoidance under § 549 and recovery under § 550. Each statute of limitation has

meaning depending upon which remedy the trustee seeks.

For example, while avoidance is a necessary precondition to any recovery under § 550, it is permissible, but not mandatory, to bring an avoidance action and a recovery action in one suit.[19] *Richmond Produce*, 195 B.R. at 463; *Crafts Plus +*, 220 B.R. at 338; *Enron*, 343 B.R. at 82. Thus, if the trustee seeks to avoid a transfer and recover the property or its value in the same adversary proceeding, assuming the avoidance is timely and established, then the recovery action will necessarily be within the one year pursuant to § 550(f). Alternatively, if the trustee prosecutes a separate adversary proceeding for avoidance and then a subsequent adversary proceeding for recovery, the avoidance action is subject to the statute of limitations under § 549(d) and § 550(f) is applicable to the recovery adversary proceeding. In short, there may be strategic reasons for a trustee to seek avoidance and recovery in the same adversary proceeding as opposed to separate adversary proceedings.

Furthermore, the line of cases exemplified by the Eleventh Circuit's *Int'l Admin. Servs.* decision, as well as *Richmond Produce* and *Nat'l Audit* within the Ninth Circuit, offers a construction of § 550 that avoids absurd results and is consistent with the purpose of the statutory framework. Specifically, in *Int'l Admin. Servs.* the debtor, its principal and his associates transferred estate assets more than 100 times among twenty-three entities. In rejecting the position W & E now asserts, the Eleventh Circuit surmised that "any streetwise transferee would simply re-

---

18. We note that there may be instances where avoidance of a transfer is a sufficient remedy making it unnecessary for the trustee to seek relief under § 550. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir.2003) (remedy of recovery is necessary only when remedy of avoidance is inadequate).

19. This is what the trustee did here. The complaint against W & E alleges § 549 and § 550 in count I. Thus, the question of avoidance was squarely at issue and necessarily decided.

transfer the money or asset in order to escape liability." *Int'l Admin. Servs.*, 408 F.3d at 704. The court noted that a mandate of an actual avoidance prior to seeking recovery from a subsequent transferee would then be an exercise in futility. *Id.* at 708; *see also Slack–Horner*, 971 F.2d at 581 (dissenting opinion). Our interpretation protects the trustee from attempts to impede recovery and also affords flexibility when a transferee or its assets have disappeared.

The shortfall of strictly construing § 550 also becomes apparent when applied under the circumstances here. The trustee commenced an adversary proceeding against Maverick, the initial transferee. The trustee and Maverick's settlement was after the trustee's judgment against W & E. The settlement agreement specifies that it is a compromise of disputed claims and does not constitute an admission, express or implied, of liability by any party. Therefore, we cannot conclude that the transfer here was "actually avoided" because the settlement specifically renounced liability.

Under a strict construction of § 550, the trustee would be precluded from pursuing subsequent transferees after settling with an initial transferee who does not admit liability. In turn, trustees would have little incentive to partially settle avoidance actions, thereby running up the costs of litigation and causing further delay. Congress could not have contemplated this outcome in enacting § 550. *See Lehigh Valley Coal Co. v. Yensavage*, 218 F. 547, 553 (2d Cir.1914) (statutes "should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them."). Simply put, the statute should be interpreted to provide flexibility and avoid an absurd result, especially in cases that involve multiple transfers or settlements as in this case.

Finally, our conclusion is consistent with case law that has disallowed automatic recovery from a subsequent transferee following the avoidance of an initial transfer through a stipulated judgment or default when the transferee had not been a party to the underlying avoidance proceeding. For example, in *Dye v. Sachs (In re Flashcom, Inc.)*, 361 B.R. 519 (Bankr.C.D.Cal. 2007), the trustee settled with the debtor's principal, who stipulated that the transfer was avoidable as a preference. At issue was whether the stipulation, which avoided the transfer, precluded the non-settling subsequent transferees from raising defenses to the avoidability of the transfer as a preference. The bankruptcy court concluded that the transferees had a constitutional right to defend the preference claim before they could be deprived of their property. The court opined that if the rule were otherwise, trustees could negotiate settlements that could later be leveraged into recoveries against other defendants. *Id.* at 525 n. 7; *See also Thompson v. Jonovich (In re Food & Fibre Prot., Ltd.)*, 168 B.R. 408, 416 (Bankr.D.Ariz. 1994) (trustee who obtained a default judgment against the initial transferee was required to prove every element of preference or fraudulent transfer against the subsequent transferee and not just that subsequent transferee was a transferee against whom recovery was appropriate).

 Accordingly, in construing the plain language of § 550 and the statutory framework as a whole, we conclude that Congress intended avoidance as one remedy and recovery as another. Thus, we hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2). This view of § 550 is compatible with the avoidance sections.

### D. Good Faith Defense

■■■■ Section 550(b)(1) provides a safe harbor defense to some transferees who have acted in good faith. *Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1199 (9th Cir. 1997) (initial transferees are subject to strict liability while subsequent transferees may assert the good faith defense). The elements of the "good faith" defense are (1) good faith, (2) for value,[20] and (3) without knowledge of the voidability of the transfer. *Mosier v. Goodwin (In re Goodwin)*, 115 B.R. 674, 676 (Bankr.C.D.Cal. 1990). The burden of proving the defense is upon W & E. *Hayes v. Palm Seedlings Partners–A (In re Agric. Research & Tech. Group, Inc.)*, 916 F.2d 528, 535 (9th Cir.1990).

■■■ The Ninth Circuit in *Hayes* observed that there is no precise definition of good faith, but courts look to what the transferee objectively "knew or should have known" rather than examining what the transferee knew from a subjective standpoint. *Id.* at 535–36. *see also Jobin v. McKay (In re M & L Bus. Mach. Co.)*, 84 F.3d 1330, 1338 (10th Cir.1996) (same); *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355 (8th Cir.1995) (same). Transferees also have a duty to investigate if there is sufficient information to put the transferee on notice that something is wrong. *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 897–98 (7th Cir.1988).

W & E contends it adequately discharged its duty to inquire. Woods examined the settlement agreement and the dismissal order, verified that the settlement payment was in fact issued to the settling parties, and made further inquiries from debtor's bankruptcy counsel and Maverick's counsel. W & E further argues that the motion for reconsideration was insufficient to put W & E on notice that the transaction might be voided as a matter of law.

As noted by the bankruptcy court, W & E was representing debtor prior to and at the time of its chapter 11 filing and it had a duty to ensure the schedules were correct. The court further found that W & E had notice of the motion for reconsideration prior to the closing of the sale. PAF's motion put W & E on notice that the dismissal of debtor's case may have been improper. Further, PAF specifically requested the court to reinstate the case in its motion. Regardless of the reason for reinstating debtor's case, these facts were sufficient to put W & E on inquiry notice that the transfer might be avoidable.

We conclude that the record supports the bankruptcy court's finding that W & E did not prove its good faith defense and, therefore, we perceive no clear error in its ruling.

### VI. CONCLUSION

For these reasons, we AFFIRM.

---

**20.** The court found that debtor was not the obligor and never received fair consideration for the legal services because debtor never retained W & E as counsel or special counsel.