**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

In re:                                  )    BAP No. NV-16-1304-LTiF
                                        )
NEVADA FIRE SAFE COUNCIL,               )    Bk. No. 3:12-bk-52625-BTB
NON-PROFIT CORPORATION,                 )
                                        )
                    Debtor.             )
_____ )
                                        )
CROSS CHECK SERVICES, LLC,              )
                                        )
                    Appellant,          )
                                        )
v.                                      )    **M E M O R A N D U M**[*]
                                        )
ALLEN M. DUTRA, Chapter 7               )
Trustee; NEVADA FIRE SAFE               )
COUNCIL, NON-PROFIT                     )
CORPORATION; LAKE TAHOE FIRE            )
PROTECTION DISTRICT; TAHOE              )
DOUGLAS FIRE PROTECTION                 )
DISTRICT; MEEKS BAY FIRE                )
PROTECTION DISTRICT; LAKE               )
VALLEY FIRE PROTECTION                  )
DISTRICT; NORTH TAHOE FIRE              )
PROTECTION DISTRICT; FRANK              )
CODY; U.S. DEPARTMENT OF                )
JUSTICE,                                )
                                        )
                    Appellees.          )
_____ )

Argued and Submitted on December 1, 2017
at Reno, Nevada

Filed - December 21, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appearances: John G. Downing argued for Appellant; Michael Lehners argued for Appellee Allen M. Dutra; Alicia Hunt argued for Appellee United States Department of Justice.

_____

Before: LAFFERTY, TIGHE,[**] and FARIS, Bankruptcy Judges.

The chapter 7[1] trustee moved for approval of a settlement with the United States resolving disputes over federal grant funds to be used by the Debtor to pay third party vendors for work performed pursuant to the grants. The settlement released approximately $9.6 million in contingent and unliquidated claims asserted by the United States and required the United States to pay more than $2 million to the trustee. Of that amount, approximately $1.4 million represented grant funds due vendors for work performed pursuant to the grants and was not property of the estate. Those funds were to be used to pay those vendors' claims in full pursuant to an agreed-upon schedule. The remaining funds, which were deemed to be estate funds, were to be distributed pro rata, after deducting administrative expenses, to those creditors asserting unsecured claims against the estate.

Appellant was among those vendors to be paid pro rata rather than scheduled for payment pursuant to a specifically approved grant. Appellant objected to the settlement, arguing that it was

_____

[**]Hon. Maureen A. Tighe, U.S. Bankruptcy Judge for the Central District of California, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure.

-2-

not fair and equitable because it violated the Bankruptcy Code's priority scheme. The bankruptcy court overruled Appellant's objection and approved the settlement, finding that it was fair and in the best interests of all creditors. We AFFIRM.

**FACTS**

Nevada Fire Safe Council ("Fire Safe") is a 26 U.S.C. § 501(c)(3) nonprofit corporation, established in 1999. Fire Safe assists communities in creating defensible space within and around those communities to protect them from wildfire destruction.

Fire Safe entered into nine financial assistance (grant) agreements with the Bureau of Land Management ("BLM") and two with the U.S. Forest Service ("USFS"), each of which required Fire Safe to conduct fuels reduction work (e.g., thinning trees and removing underbrush) in the Lake Tahoe region. Fire Safe contracted with third-party vendors to perform the fuels reduction tasks. In order for vendors to be paid from grant monies, Fire Safe was required to submit documentation to the appropriate federal agency – USFS or BLM – for approval.

In 2011, the U.S. Department of Agriculture's Office of the Inspector General ("OIG") audited Fire Safe. OIG found that Fire Safe had not properly accounted for its grant funds, had commingled grant monies with its own funds, and had used grant funds to pay unauthorized expenses. As a result, all grant funds were frozen.

Fire Safe filed for chapter 7 relief on November 18, 2012. Appellee Allen M. Dutra was appointed chapter 7 trustee (the "Trustee"). The United States Department of Justice ("DOJ")

-3-

filed two proofs of claim, one on behalf of USFS for $5,735,265.23 and the other on behalf of BLM for $3,958,795.18. The claims reflected the "contingent and unliquidated liability of the Debtor" to USFS and BLM for payments made to third-party vendors that were potentially unallowable, primarily due to insufficient documentation.[2]

Claims were also filed by vendors, including Appellant Cross Check Services, LLC ("Cross Check"). Cross Check filed an unsecured claim for $249,954.52 based on an arbitration award it obtained for breach of contract. The principal amount of the award ($169,844) represented amounts Fire Safe had refused to pay for extra fuels reduction work performed by Cross Check after Fire Safe's project manager, without first obtaining agency authority, had assured Cross Check it would be paid.[3]

In the course of administering the estate, the Trustee took the position that, notwithstanding DOJ's proofs of claim, Fire Safe had utilized third-party vendors to provide goods and services for the benefit of both USFS and BLM in excess of grant monies paid to Fire Safe, such that the estate had offsetting

---

[2]The parties did not include DOJ's proofs of claim in their excerpts of record. We have therefore exercised our discretion to examine the docket and imaged papers in the underlying bankruptcy case. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3]The final arbitration award was entered postpetition after the court approved the Trustee's and Cross Check's stipulation to lift the stay to permit Cross Check to pursue a final judgment in the arbitration and to present its claim to Fire Safe's insurance company (but not to seek collection against estate assets).

-4-

claims against those entities. DOJ took the position that if litigation were pursued, it would need to be filed in the Court of Federal Claims in Washington, D.C. Because there was no money in the estate to pursue litigation in the District of Columbia, the Trustee continued negotiating with DOJ, and the parties eventually reached a settlement.

On April 15, 2016, the Trustee filed a motion to approve compromise (the "Motion"). The settlement called for the United States to pay $2,025,906.00 to the Trustee, of which $1,412,902.04 was designated the "Grant Sub-Recipient Fund" and was to be used to pay only specified sub-recipients that had performed work relating to unpaid claims allowable under the grants ("Schedule A Sub-Recipients"). The Schedule A Sub-Recipients were to be paid the lesser of the amount demanded in their proof of claim or the amount listed on Schedule A to the settlement agreement. The remaining $613,003.06, designated as the "Estate Fund," represented reimbursement to the estate and was to be used by the Trustee to pay allowed bankruptcy claims pro rata in order of priority. The settlement provided that the Trustee's statutory commission and allowed attorney's fees of up to $40,000 would be paid from the Estate Fund, with the commission based upon all amounts distributed to creditors, including Schedule A Sub-Recipients. The settlement included mutual releases.

The list of Schedule A Sub-Recipients and the amounts they were to be paid was generated by USFS and BLM based on their review and analysis of documents and records turned over by the Trustee and certain third parties. Conclusions as to the amounts

-5-

due each sub-recipient were based on the relevant grant agreement, claims submitted to USFS and BLM from Fire Safe, and documentation of work performed. Cross Check was not among the Schedule A Sub-Recipients.

Several parties, including Cross Check, filed oppositions to the Motion.[4] The bankruptcy court held status conferences and continued the hearing on the Motion several times to give the objecting creditors time to communicate with DOJ regarding the amounts allocated (or not) to them on Schedule A. During that period, Cross Check submitted invoices and other documentation to DOJ in an attempt to have its claim allowed as a Schedule A claim. The DOJ responded to Cross Check with a letter dated July 22, 2016 (the "July 22, 2016 Letter"), explaining that (i) Fire Safe had never submitted any documentation for reimbursement of Cross Check's claim, and (ii) in any event, Cross Check's claim would not have been allowable even if Fire Safe had submitted documentation because Fire Safe's claims relating to work performed by Cross Check had been "paid in excess of the amounts that were determined to be allowable after review by the agencies . . . ." According to the spreadsheet attached to the July 22, 2016 Letter, the largest portion of the claim that was disallowed represented cost overruns that had not

---

[4]Those parties included Appellees North Lake Tahoe Fire Protection District, Tahoe Douglas Fire Protection District, Meeks Bay Fire Protection District, Lake Valley Fire Protection District, North Tahoe Fire Protection District (collectively, the "Fire Protection Districts"), and Frank James Cody. In this appeal, the Fire Protection Districts filed a joinder to the Trustee's brief requesting that the Panel affirm the bankruptcy court's approval of the settlement.

been pre-approved by a federal program manager. The spreadsheet also indicated that reimbursement for interest, attorney's fees, and arbitration costs was not allowable under the grant terms.

By the August 29, 2016 final hearing on the Motion, the only remaining objecting creditor was Cross Check; eight other creditors had sent letters to the Trustee – in response to the Trustee's request for input – indicating their support for the compromise. After hearing argument, the bankruptcy court granted the Motion, making the following oral findings:

> [T]here is no money in this estate except for the United States providing a little over 2 million in this on some conditions, that the people . . . who Fire Safe processed properly are getting their full claims, in essence. The people that Fire Safe didn't process properly are getting a portion of the $613,000 that is part of what the government is giving.

> I don't think that if there was litigation concerning this there would be any better result. I think it would cost tens of thousands, if not hundreds of thousands of dollars to litigate this. So I do think it's in compliance with [Rule] 9019 as interpreted by In re A&C Properties. And I'm going to approve . . . the stipulation.

> I think that the trustee and his counsel have done a very good job here. This was a no-asset case when it started and it's paying a significant amount to many of the creditors and it's paying a . . . a not insignificant amount to creditors who were, in effect, cheated by [Fire Safe].

> . . . **I do think it's a fair settlement. I do think it's in the best interest of the creditors.**

Hr'g Tr. (August 29, 2016) at 42:23-43:22 (emphasis added).

The bankruptcy court entered written findings of fact and conclusions of law and an order granting the motion on September 22, 2016. Cross Check timely appealed.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

§§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in granting the Trustee's motion to approve compromise.

## STANDARD OF REVIEW

We review the bankruptcy court's order approving a trustee's application to compromise controversy for abuse of discretion. Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its actual findings are clearly erroneous. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.   Standard for Approval of a Settlement**

Before approving a compromise, the bankruptcy court must find that it is fair and equitable. In re A & C Props., 784 F.2d at 1381.

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id.

These factors "should be considered as a whole to determine whether the settlement compares favorably with the expected

-8-

rewards of litigation. . . . A trustee seeking approval of a settlement is not required to prove it would have been impossible to obtain a superior result by trying the case." Greif & Co. v. Shapiro (In re W. Funding Inc.), 550 B.R. 841, 851-52 (9th Cir. BAP 2016).

**B.    The bankruptcy court's findings were sufficient to support approval of the settlement.**

The bankruptcy court found that the settlement was fair. As to the A & C Properties factors, the bankruptcy court found that there would have been no difficulty with collection if the Trustee prevailed in a lawsuit but that the lawsuit would have been "somewhat complex" because of regulations and audit requirements. The bankruptcy court also found that the settlement was in the best interests of all creditors "because payment of $613,003.96 to the estate was conditioned upon having the Trustee pay $1,412,902.04 to the Schedule "A" Sub-Recipients. If that condition is not met, then creditors receive nothing." The bankruptcy court, however, crossed out the proposed conclusion of law stating that the Trustee would not have had a high probability of success in litigation because the grant funds were not property of the estate.

Cross Check does not challenge the bankruptcy court's findings and conclusions but argues that they are insufficient to support approval of the settlement. Cross Check asserts that the bankruptcy court did not find the settlement to be fair and equitable. This is incorrect: the bankruptcy court expressly found that the settlement was fair – although this finding was not incorporated into its written findings – and implicitly found

-9-

it was equitable in finding that it was in the best interests of all creditors.

Cross Check argues, however, that the bankruptcy court's refusal to make a finding regarding the probability of success in litigation is fatal to the approval of the settlement. This argument is not persuasive. While A & C Properties states that the bankruptcy court "must" consider the factors listed above, including the probability of success in the litigation, it does not require an explicit finding as to each factor. In fact, in A & C Properties, the Ninth Circuit Court of Appeals affirmed the bankruptcy court's approval of the settlement at issue despite finding that the bankruptcy court's findings were "rather general." 784 F.2d at 1383. The Court of Appeals concluded that the record supported approval of the settlement because it showed that the bankruptcy judge "was informed and had apprised himself of all facts necessary to make an intelligent and independent judgment that the compromise was fair and equitable[,]" and that there was "clear support in the record for our affirming the findings of fact with respect to the approval of the compromise." Id. Finding that the evidence supporting the compromise was thorough and comprehensive, the bankruptcy court was familiar with the entire record, had addressed the creditors' objections, and "held directly, expressly or by necessary implication, on every substantial point of contention," the Court of Appeals held that the bankruptcy court did not abuse its discretion in approving the compromise. Id. at 1384.

The same can be said here. Despite the lack of an explicit finding regarding the probability of success in litigation, the

-10-

record as a whole supports the bankruptcy court's ultimate conclusion that the settlement was fair and in the best interests of creditors. Cross Check does not dispute the bankruptcy court's findings that the litigation would be expensive, that the estate had no assets to fund such litigation, and that the settlement would provide a better outcome for creditors than could be obtained through litigation (except for the unequal distribution issue discussed below). Given that there was no money in the estate to fund complex litigation in Washington, D.C., and Trustee's counsel's representation that the settlement resulted in a recovery that was $400,000 greater than what the Trustee had initially expected to receive, a finding regarding the probability of success in the litigation would have added nothing of substance. Overall, the record supported the conclusion that the settlement compared "favorably with the expected rewards of litigation." In re W. Funding, Inc., 550 B.R. at 852.

Cross Check also contends that it was "denied due process" because DOJ refused to review the merits of its claim for the sole reason that Fire Safe did not submit invoices on Cross Check's behalf. Based on the terms of the grants, DOJ would have been within its rights to deny the claim solely on this basis. Moreover, Cross Check's contention is not supported by the record: the July 22, 2016 Letter made clear that Cross Check's claim would not have been approved even if Fire Safe had submitted the invoices on its behalf because none of the amounts claimed were allowable under the grants. Moreover, the bankruptcy court found, and Cross Check does not dispute, that:

-11-

> The creditors of the Debtor did not have any contract, express or implied in fact, with the United States. As such, no creditor has the right to directly sue the United States or any of its agencies, officers or employees in connection with Fire Safe's grants or work performed for Fire Safe.

Because the United States' only contracts were with Fire Safe, DOJ had no duties to Cross Check. In its reply brief, Cross Check concedes that it could not assert any rights against the United States, but seems to argue that the Trustee could have successfully litigated the issue on behalf of Fire Safe. Even if that were true, Cross Check has not shown that the bankruptcy court erred in finding that the settlement was in the best interests of all creditors given the costs associated with litigation.[5]

**C. The settlement does not violate the Bankruptcy Code's priority scheme.**

The settlement had the effect of reducing – by a significant amount – the total claims against the estate and bringing $613,000 into an administratively insolvent estate. Without the Settlement, creditors who were not entitled to distributions of grant funds stood to receive nothing. Cross Check does not

---

[5]Notably, the only relief requested by Cross Check in this appeal is for the Panel to vacate the order approving the settlement and remand to require the bankruptcy court to condition the settlement on a pro rata distribution of all the funds among all creditors. This relief seems inconsistent with an argument that the bankruptcy court's findings were either erroneous or insufficient to support approval of the settlement; if the Panel were to so hold, the appropriate remedy would be to reverse outright, reverse and remand, or vacate and remand. Further, the funds allocation is a term of the settlement, and we lack power to rewrite the settlement on appeal.

-12-

dispute any of these points, but takes the position that the Settlement is not equitable because creditors who are not Schedule A Sub-Recipients will receive approximately 33 percent[6] of their claims while Schedule A Sub-Recipients will be paid in full. Cross Check contends that because of this unequal distribution, the settlement is contrary to the Bankruptcy Code's priority scheme, citing Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452 (2d Cir. 2007). In that case, the Second Circuit Court of Appeals remanded an order approving a settlement so the bankruptcy court could assess the justification for distribution of funds to junior creditors in violation of the priority rules. Id. at 465-66. The issue in Iridium Operating, however, was the distribution of **estate** funds. That case is thus distinguishable.

Here, the bankruptcy court found:

> that **the funds allocated to the Schedule "A" Sub-Recipients are not property of the bankruptcy estate under section 541(a)** because the Debtor lacked any beneficial or equitable interest in these grant funds and its use of the funds was limited to budgeted and allowed uses defined and controlled by its grants and applicable federal statutes, regulations and agency policies.

(Emphasis added).

Cross Check has never disputed, either in the bankruptcy court or in this appeal, that the funds to be distributed to Schedule A Sub-Recipients were not property of the bankruptcy estate. The bankruptcy court's finding that the funds were not

---

[6]In its reply brief, Cross Check suggests that the actual distribution will be closer to 17 percent.

-13-

property of the estate was correct. In general, where a governmental agency awards grant funds to a private nonprofit community service organization but maintains control over how those funds are spent, the nonprofit organization acts merely as a conduit and does not obtain any interest in the funds such that the funds become property of the estate if the organization files a bankruptcy case. See Springfield v. Ostrander (In re LAN Tamers, Inc.), 329 F.3d 204 (1st Cir. 2003); Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233 (3d Cir. 2001); In re Joliet-Will Cty. Cmty. Action Agency, 847 F.2d 430 (7th Cir. 1988). In this case, it is undisputed that the terms of the federal grants and the applicable federal regulations severely restricted Fire Safe's use of grant funds such that those funds did not become property of the estate.

The Bankruptcy Code's priority distribution rules apply only to property of the estate. See § 726 (setting forth priority scheme for distributions of property of the estate). Because the $1.4 million allocated to Schedule A Sub-Recipients was not property of the estate, there was no requirement that those funds be distributed pro rata. Under the settlement, the $613,000 deemed to be property of the estate is to be distributed pro rata; thus the settlement is in compliance with the Bankruptcy Code.

## CONCLUSION

For the reasons explained above, the bankruptcy court did not abuse its discretion in granting the Trustee's Motion. We therefore AFFIRM.

-14-