# FILED

AUG 20 2014

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-13-1527-KiTaPa |
| KENNY G ENTERPRISES, LLC, | Bk. No.   8:11-24750-TA |
| Debtor. | |
| KENNY G ENTERPRISES, LLC, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| THOMAS H. CASEY, Chapter 7 Trustee; MOSTAFA KARIMABADI; EM TRUST; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on July 25, 2014,
at Pasadena, California

Filed - August 20, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

Appearances:     Elizabeth LaRocque, Esq. argued for appellant, Kenny G Enterprises, LLC; Appellee Thomas H. Casey, Chapter 7 Trustee, argued pro se.

Before:  KIRSCHER, TAYLOR and PAPPAS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, former chapter 11[2] debtor Kenny G Enterprises, LLC ("KGE"), appeals two orders, one converting its case to chapter 7 and the other denying its motion to reconsider the conversion order.  We AFFIRM.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.  KGE's bankruptcy filing and confirmed plan**

KGE is a Nevada limited liability company formed in 2008. KGE was formed, owned and operated by Kenneth Gharib, who has also used the aliases Kenneth "Garett" or "Garrett" and his birth name Khosro Gharib Rashtabadi ("Kenny").[4]  KGE was in the business of purchasing, improving and selling or renting real properties that Kenny believed were good investment opportunities.  At the time of plan confirmation, KGE's bankruptcy estate consisted of only one asset, a residential real property known as the Hillsborough Property ("Property"), which was rented out to a third party. Rental income from the Property was the estate's sole source of revenue.

KGE filed a chapter 11 bankruptcy case on October 24, 2011. By way of stipulation, Bank of America, the first lienholder on the Property, agreed to value the Property at $1.2 million. Shortly after the petition date, Kenny and KGE sued the sellers of

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] Appellees Mostafa Karimabadi and EM Trust filed a joinder to the chapter 7 trustee's brief on April 2, 2014.  No brief was received from the United States Trustee.

[4] Because of the aliases used by Mr. Gharib, we refer to him as Kenny for clarity; no disrespect is intended.

-2-

the Property, Mostafa Karimabadi and his wife Monir Zarrinnegar ("Mostafa"),[5] in state court contending that Mostafa failed to disclose certain defects in the Property. Mostafa filed a cross-complaint contending that Kenny and/or KGE failed to tender the purchase price of $3,125,000. Mostafa filed a proof of claim in KGE's case for $1,265,000, which included a purported secured claim of $200,000. KGE never objected to Mostafa's claim.

KGE filed its first amended plan and disclosure statement in November 2013 ("Plan"). Under the terms of the Plan, payments to creditors were to be made from rental income derived "from the continued operation of the Hillsborough Property as a residential real property." Unsecured creditors were to receive a total of approximately $33,300 on a pro rata basis, or $555 per month for five years. Kenny agreed to contribute any funds necessary in case of a shortfall. Although Section V of the Plan is entitled "Sale or Transfer of Property; Assumption of Contracts and Leases; Other Provisions," no representations were made in that section or any other (or in the parallel Section XVI in the disclosure statement) about the possibility of KGE selling the Property. The Plan provided that all estate property vested in KGE upon confirmation, but was silent as to whether estate property remained vested in KGE upon conversion of the case to chapter 7.

Two creditors rejected the Plan, Mostafa and R&M Remodeling, who held an unsecured claim of $1,950. Over their objections, an order confirming the Plan was entered on January 9, 2013 (the

---

[5] We refer to creditors Mr. Mostafa Karimabadi and Ms. Monir Zarrinnegar as "Mostafa" simply because the parties have done so throughout this case. Again, no disrespect is intended.

-3-

"Confirmation Order"). The Confirmation Order, drafted by KGE's counsel Dana Douglas ("Douglas"), stated "[c]onfirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors [sic] or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan." No such liquidation provision was provided for in the Plan.

## B. Litigation with Mostafa and EM Trust

Meanwhile, Mostafa recorded a lis pendens against the Property in connection with the state court litigation involving KGE and Kenny. Upon KGE's objection that such action violated the automatic stay, the lis pendens was removed.

In February 2013, Mostafa moved for relief from stay to continue with the state court litigation. KGE opposed. The initial March 12 hearing on the motion was continued to April 9, 2013. No one appeared for KGE at the April 9 hearing.[6] Counsel for Mostafa pointed out to the bankruptcy court that the state court litigation involved a claim against KGE and Kenny for rescission, wherein Mostafa was seeking to recover the Property. Counsel requested that Mostafa be allowed to re-record a lis pendens for fear the Property might be transferred during litigation. Counsel's fear was based on a call he received from an escrow company saying that KGE was trying to sell the Property. The court agreed and granted Mostafa's requested relief. An order granting the stay relief motion and authorizing the re-recording

---

[6] This lack of appearance was probably due to the fact that the Property had already been sold to another party on March 26, 2013.

of the lis pendens was entered on June 3, 2013.

Meanwhile, in April 2013, EM Trust, a party who had sued KGE and Kenny prepetition in state court for breach of a prior settlement agreement, obtained a judgment against Kenny for $1,729,080.82. Until that point, EM Trust had not participated in KGE's bankruptcy case and had argued to the state court that it wished to pursue Kenny individually. EM Trust would later file a proof of claim in KGE's case based on its judgment.

**C.    KGE sells the Property post-confirmation**

On March 26, 2013, between the two scheduled hearings on Mostafa's stay relief motion and apparently unbeknownst to Mostafa and other unsecured creditors, KGE sold the Property for $3,140,000. The grant deed, Plan and Confirmation Order were recorded with the county on that same day.

**D.    KGE's motion for final decree and order converting the case to chapter 7**

KGE filed a motion for final decree, discharge and order closing its chapter 11 case on July 20, 2013 ("Final Decree Motion"). KGE contended it was entitled to a final decree and discharge under Rule 3022 because the Property had been sold and all creditors had been paid pursuant to the Plan, with the exception of Mostafa for whom a payment of $2,650.68 had been put into escrow and was conditioned upon a successful outcome of the state court litigation. In support, KGE offered a declaration from Steven Rashtabadi aka Farhad Gharib Rushtabadi (with a "u") aka Steven Rush ("Steven"),[7] Kenny's brother, who claimed to be

---

[7] Because of the various aliases used by Mr. Rushtabadi, we
continue...

-5-

the new managing member of KGE. Steven affirmed that KGE had made all of the required payments under the Plan. Steven would later testify at a Rule 2004 examination in August 2013 that Kenny sold Steven all of his interest in KGE for $8,500 cash in June or July 2013, although a written agreement indicated the transfer of ownership occurred on April 1, 2013. Steven also stated that he had not yet taken control of KGE and knew little about its operations; he is in the film industry. When questioned, Steven did not know where KGE's offices were located and had never been there. He was also unaware of the Property's existence or that KGE had sold it.

Mostafa, EM Trust and the United States Trustee ("UST") objected to the Final Decree Motion. Mostafa argued that the unnoticed sale of the Property, which it contended was "estate" property, violated § 363(b)(1). Mostafa also argued that no provision in the Plan provided for the sale of the Property. The UST opposed the Final Decree Motion on the basis that KGE had not paid $6,175 in quarterly fees owing. EM Trust's objection consisted primarily of excerpts of Kenny's deposition testimony taken at his recent judgment debtor exam in July 2013. EM Trust argued that the only protection for creditors from Kenny's alleged fraud was to convert the case to chapter 7 and appoint a trustee to recover the stolen assets of KGE's estate. Attached to its opposition was a copy of a state court judgment dated June 18, 2013, charging KGE with the payment of the unpaid and outstanding

[7]...continue
refer to him as Steven for clarity; no disrespect is intended.

-6-

judgment initially entered against Kenny in April 2013 for $1,729.080.82. Attached also was a copy of a bankruptcy court order entered on July 25, 2013, in the chapter 11 case of another one of Kenny's entities, Ken & Associates, Inc., converting the case to chapter 7 for bad faith and lack of prospect for successful reorganization. According to that order, Kenny has filed three other bankruptcy cases that were dismissed for bad faith: In re Union Inv. Corp., 12-17642; In re Ken & Assocs., Inc., 10-26670; and In re Hillsborough, 11-11181.

In its reply, KGE noted that it had paid the outstanding UST fees. As for Mostafa's objection that any sale of the Property required notice and court approval under § 363(b)(1), KGE contended (1) the sale of the Property was in the ordinary course of KGE's business so no notice or court approval was required, and (2) confirmation of the Plan vested all estate property in KGE, which permitted KGE to sell the Property without prior court approval. Finally, KGE disputed that EM Trust had any interest in KGE; its judgment was against Kenny. In conclusion, KGE again asserted that all claims had been paid pursuant to the Plan and that the estate had been fully administered.

Prior to the hearing on the Final Decree Motion, the bankruptcy court entered a tentative ruling requesting the following information from KGE:

(1) a list of who has been paid and when;

(2) an explanation as to how and to whom property was sold (was this pursuant to the plan?);

(3) an explanation as to why apparently some creditors were omitted; and

(4) an explanation as to how management changed.

-7-

Mostafa, EM Trust, the UST, and KGE (represented by Douglas) appeared at the hearing on the Final Decree Motion on August 14, 2013. Douglas again represented that all claims had been paid; secured creditors were paid out of the escrow, and unsecured creditors received plan payments for February 2013 and received balloon payments for any remaining amounts upon the sale of the Property in March 2013. Douglas also represented that the sale was disclosed in post-confirmation reporting. When Douglas argued that KGE was free to sell the Property without notice, but that KGE had proceeded in doing so without her counsel, the bankruptcy court inquired:

> THE COURT: Two questions. First, was the sale contemplated in the plan?
>
> MS. DOUGLAS: Not at all.

Hr'g Tr. (Aug. 14, 2013) 4:14-16. The court's second question was why KGE deserved a discharge if this was simply a liquidation. Douglas later conceded that Mostafa's claim had not yet been paid, but represented that KGE was holding the funds, and that she had recommended that KGE tender them even though the litigation was not yet resolved.

Counsel for EM Trust requested that the bankruptcy court take action to gain control over the sale proceeds so Kenny could not squander or steal them. The court inquired how that would occur procedurally. Should it convert the case to chapter 7 and have the trustee make demand on KGE for turnover of the sale proceeds? Douglas then stated that the sale proceeds were being held by a Nevada entity called Freedom Investment, Inc. ("Freedom") and that the funds could be placed into an account, which could be observed

-8-

by other parties. Counsel for Mostafa argued that converting the case to chapter 7 was the best remedy to allow supervision over KGE. He further argued that the Plan did not provide for the sale of the Property; the Plan was to lease it for a period of years.

The bankruptcy court then announced its decision to convert the case to chapter 7:

> The wrinkle in this case, of course, is that you have a confirmed plan. So you have a post-confirmation reorganized Debtor deciding, plan schman, I'm just going to go ahead and sell. And that creates a legal conundrum, which I'm not entirely sure I have a ready answer for. Is that subject to 549 avoidance or is it not? A little hard to say.
>
> So, this is not necessarily an easy problem to unravel. But I can tell you one thing. There's nothing that I have heard that suggests to me that the Court should relax its jurisdiction and give a final decree, or certainly not a discharge. I mean, that suggestion is totally off the table, not the least of which the plan didn't call for a liquidation, and this has now become, effectively, a liquidation.
>
> So, you're not going to get – by outflanking the plan, what the plan – you're not going to subvert the law which denies in a liquidating case, a discharge by unilateral action. And now the question becomes, what other remedies should I employ right now beyond converting the case to Chapter 7, which I intend to do?

Id. at 16:6-17:1.

Douglas did not object to the court's decision to convert the case. She agreed to relay the court's directive to KGE that either Kenny or Steven obtain a check from Freedom for the sale proceeds and turn it over to the trustee, or they would be facing a contempt charge. Douglas represented that the remaining sale proceeds being held by Freedom were $1,750,560.16.

The UST then asked the bankruptcy court for an order restraining Kenny or any other entity from transferring the funds. The court agreed to issue the TRO, but believed it was "already

-9-

the law" that the funds could not be transferred. Id. at 20:13.

The bankruptcy court entered an order on August 14, 2013, denying the Final Decree Motion, converting the case to chapter 7 and restraining any further transfers of the sale proceeds (the "Conversion Order"). The Conversion Order did not state the basis for the conversion.

**E.    KGE's motion to reconsider the Conversion Order**

     **1.    The parties' arguments**

Armed with a new attorney, KGE filed a motion to reconsider the Conversion Order on August 28, 2013, thereby tolling its appeal time under Rule 8002. KGE sought relief under both Civil Rule 59, incorporated by Rule 9023, and Civil Rule 60(b)(1), (2), (3), (4) and (6), incorporated by Rule 9024. KGE argued: (1) the final decree should have been entered because the Property vested in KGE upon confirmation, and the post-confirmation sale of the Property, which provided full payment to all creditors, did not require notice or court authority and was in compliance with the Plan; (2) no party tried to revoke the Confirmation Order within the required 180 days under § 1144, so creditors could not now collaterally attack it in an attempt to get better treatment of their claim; (3) the Plan was crammed down on Mostafa, who made untruthful statements about KGE's alleged bad faith at the August 14 hearing; (4) EM Trust, which made the same untruthful statements, chose not to participate in the bankruptcy despite having notice and its judgment was against Kenny only; (5) the bankruptcy court violated KGE's due process rights by sua sponte converting the case to chapter 7 without notice and opportunity to be heard; and (6) no basis existed under § 1112(b)(4)(L), (M), (N)

-10-

or (O) to convert the case: no party had sought revocation of the Confirmation Order; KGE had substantially consummated the Plan; no one had alleged that KGE materially defaulted on the Plan; and the Plan did not provide for any occurrence or condition that would automatically terminate it. KGE did not contest the bankruptcy court's decision to enter the TRO.

In his declaration in support, Kenny stated that KGE was in full compliance with the Plan and that all creditors had been paid pursuant to its terms. Exhibit 14 was provided as evidence of these payments. However, some of the alleged "balloon" payments appeared to be missing, and Kenny failed to explain why he had signed certain checks on April 10 and July 15, 2013, which is after Steven had allegedly purchased KGE and became its managing member on April 1, 2013.

Mostafa, EM Trust, the UST and the newly-appointed chapter 7 trustee, Thomas H. Casey ("Trustee"), opposed the motion to reconsider. Among other things, Mostafa argued that KGE had violated the terms of the Plan by not paying his claim. Thus, argued Mostafa, the motion should be denied because conversion was warranted under § 1112(b)(4)(M) and (N).

Trustee's opposition consisted of over 400 pages. A few days after entry of the Conversion Order, Trustee had conducted Rule 2004 examinations of both Kenny and Steven. Kenny testified that on the day the Property was sold, the $1.75 million in sale proceeds were wired to KGE's DIP account.[8] The following day,

---

[8] Trustee's evidence showed that $1,897,126.22 in sale proceeds were wired to KGE's DIP account, as opposed to the $1.75 continue...

-11-

Kenny caused those funds to be wired to Freedom for the purchase of real property in Iran, which was being sold by a third party. The purchase price was $1.8 million, but Kenny valued the Iranian property at $2 million. Kenny testified that the owner of Freedom was Mahadi Adib, and he denied having any interest in Freedom even though a "Kenneth Garrett" was listed as its registered agent, and Freedom's mailing address was the same P.O. Box address Kenny had used for some of his other entities registered in Nevada.[9] Trustee's counsel had also learned that on August 14, the day of the hearing on the Final Decree Motion and the entry of the Conversion Order and TRO, Freedom wired $1.4 million (the funds remaining in its US Bank account) to another party and closed its account. KGE had also issued several checks to insiders paid out of the sale proceeds.

Trustee argued that KGE's actions violated the terms of the Plan. Namely, the Plan did not provide for, or even contemplate, the sale of the Property; it provided that rental income from the Property was to fund payments to creditors. The Plan also did not allow KGE to transfer the sale proceeds to various insiders and use the sale proceeds to purchase real property in Iran. Further, KGE had failed to provide evidence that creditors had been paid in full per the Plan and, in fact, evidence showed to the contrary. KGE's exhibits filed the day after the August 14 hearing did not provide sufficient evidence of full payment to all creditors,

[8]...continue
million represented at August 14 hearing.

[9] Freedom was created on March 5, 2013, which is just twenty-one days prior to the sale of the Property.

-12-

including the unsecured claims of Bank of America and Wells Fargo. As for Mostafa's claim, Trustee learned that on August 14 only $257.29 remained in KGE's DIP account. Thus, KGE's representation that $3,000 had been set aside for Mostafa, whose $1,265,000 claim remained unliquidated, was inaccurate. Further, no payment appeared to have been made on the Franchise Tax Board's ("FTB") claim. The evidence also indicated that none of the checks written for creditors had cleared KGE's DIP account.

The UST agreed the Plan did not provide for the sale of the Property and argued that the sale constituted a material default under § 1112(b)(4)(N). The UST argued that based on the evidence before the bankruptcy court on August 14, it had the power to convert the case to chapter 7 under § 105. Moreover, Douglas never raised or argued at the hearing that the court could not sua sponte convert the case. The UST took offense to KGE's assertion that it knew about the sale when it occurred but made no objection. The Post-Confirmation Status Report disclosing the sale was due May 8, 2013 (within 120 days post-confirmation), but was not served on the UST until July 9, 2013, which was one day after the last day to revoke plan confirmation. Also, even though counsel for the UST had learned in late June 2013 about a possible sale of the Property through a call from Mostafa, he was not able to confirm that it actually occurred until that same July 9 date.

EM Trust adopted the arguments raised by Trustee, but spent a majority of its brief providing what it contended were examples of Kenny's perjury in connection with the EM Trust litigation and at his Rule 2004 examination. EM Trust suggested the grant deed Kenny produced for the Iranian property was fake and argued that

-13-

the Republic of Iran would never allow a Nevada LLC to own real property in Iran.

In its reply, KGE argued that no exigent circumstances existed sufficient to justify sua sponte conversion of the case and that it was wrongfully denied its due process right to address the issues raised by the objecting parties at the August 14 hearing. While the court's tentative ruling on the Final Decree Motion asked for clarification of whether creditors were paid, among other things, the court did not at any time suggest the case would be converted.

KGE argued that no cause existed under § 1112(b)(4)(M) or (N) to convert the case to chapter 7. The Plan was substantially consummated, KGE was not in default of the Plan, and creditors were paid the full amount required under the Plan. As for the unsecured claims of Bank of America and Wells Fargo, KGE claimed both claims were paid through escrow in full. KGE further claimed the FTB had indicated after receiving partial payment of its claim that it wanted to receive the remainder on a monthly basis pursuant to the Plan. Accordingly, KGE would continue the monthly payments to the FTB until the claim was paid in full. KGE maintained that sufficient funds had been set aside for Mostafa who, at most, was allowed only $3,000.

KGE argued that none of the opposing parties had provided any authority that KGE needed authorization under § 363 to sell the Property, when it was no longer property of the estate, or that the sale was subject to avoidance under § 549, which applies only to estate property. KGE also argued that creditors were bound by the Confirmation Order and an increase in the value of the

-14-

Property did not allow for better treatment of their claims.

### 2.   The bankruptcy court's tentative ruling

In its tentative ruling on the motion to reconsider, the bankruptcy court found that KGE had not shown relief was warranted under either Civil Rule 59 or 60.  In fact, the evidence submitted more strongly convinced the court that immediate placement of a fiduciary was absolutely necessary.  The court reasoned that although the Property vested in KGE upon confirmation, it did not follow that KGE was then free to do whatever it wanted in contravention of the Plan.  No provision in the Plan suggested that KGE would sell its only asset, without any notice to affected parties, and then transfer away all of the proceeds to buy property in Iran.

KGE's "no harm no foul" argument failed because all unsecured creditors had not been paid as claimed.  KGE admitted not paying the FTB, and its "intent" to keep paying installments on that claim was not convincing or consistent with the Plan.  The court was also "more than a bit perturbed" that its injunction against disbursements of proceeds was deliberately ignored the very same day it was issued.  Even though a motion to approve the sale may not have been required under the circumstances, failing to keep intact the proceeds only showed that KGE had no intention of fulfilling its duties under the Plan.  KGE's disbursement of proceeds to undisclosed locations, while not paying allowed claims provided for in the Plan, was an obvious default.  Therefore, relief under Civil Rules 59 or 60 would be denied, as conversion was correct due to KGE's material default with respect to the Plan and its inability to effectuate substantial consummation of the

-15-

Plan.

### 3. The hearing and the bankruptcy court's ruling

At the hearing on the motion to reconsider, the bankruptcy court agreed with KGE's counsel that § 363 did not apply to the sale of the Property. Trustee argued that KGE was in default of the Plan for not paying all unsecured creditors. No funds were held back for Mostafa, the FTB had not been paid, no evidence showed that Bank of America was paid on its unsecured claim and, according to KGE's bank statements up through August 2013, none of the written checks to creditors had cleared KGE's DIP account.

The bankruptcy court orally denied the motion to reconsider. Its findings consist of the following:

> THE COURT: By the way, in case any appellate court wants to know why, the major reason I don't that [sic] Rule 59 or 60 is indicated, is that I don't think there's any error of law. I don't think there's any change in the law. I don't think there's any mistake or anything like that. The fact that there was in fact a default under the plan, I think that's been established. That alone, if nothing else were true, is sufficient grounds to convert the case. So, for those reasons --
>
> MR. GOE: Just one question. What is the default -- what's the -- let me just ask two quick questions.
>
> . . . .
>
> MR. GOE: Are you finding that a Section 363 order was required?
>
> THE COURT: No.
>
> MR. GOE: You're not find [sic] that. Okay. Are you -- what is -- what were the defaults? Which creditors weren't paid?
>
> THE COURT: By your own admission, the Franchise Tax Board --
>
> . . . .
>
> THE COURT: There were probably others. The point is, it doesn't have to go that far. There was a default.

-16-

Bingo.

MR. GOE: Okay.

THE COURT: Don't even get into the odor that surrounds this, Mr. Goe.

MR. GOE: Right.

THE COURT: Just if you want to have a basic, just the basics of what you want to review by -- in a higher court? It was a default. And as long as there's a default, the thing gets converted. . . .

Hr'g Tr. (Oct. 1, 2013) 33:19-34:4, 34:12-19, 34:23-35:8.

An order denying the motion to reconsider was entered on October 30, 2013. KGE timely appealed the Conversion Order and the order denying reconsideration of the Conversion Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court violate KGE's due process rights when it sua sponte converted the case to chapter 7 at the hearing on the Final Decree Motion?

2. Did the bankruptcy court abuse its discretion in converting the case to chapter 7?

3. Did the bankruptcy court abuse its discretion in denying reconsideration of the Conversion Order?

## IV. STANDARDS OF REVIEW

Whether the bankruptcy court's procedures comport with due process is reviewed de novo. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009); Garner v. Shier (In re Garner), 246 B.R. 617, 619 (9th Cir. BAP 2000).

The bankruptcy court's decision to convert a chapter 11 case

-17-

to chapter 7 is reviewed for an abuse of discretion. <u>Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities)</u>, 264 F.3d 803, 806 (9th Cir. 2001); <u>Johnston v. JEM Dev. Co. (In re Johnston)</u>, 149 B.R. 158, 160 (9th Cir. BAP 1992). Likewise, we review a bankruptcy court's denial of a motion for reconsideration for an abuse of discretion. <u>Tracht Gut, LLC v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC)</u>, 503 B.R. 804, 809 (9th Cir. BAP 2014). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support from evidence in the record. <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm the bankruptcy court's rulings on any ground supported by the record. <u>See</u> <u>Hartmann v. Cal. Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1121 (9th Cir. 2013).

## V. DISCUSSION[10]

**A. The bankruptcy court did not violate KGE's due process rights when it sua sponte converted the case to chapter 7, but even if it did, such error was harmless.[11]**

---

[10] KGE argues that Trustee is wrongfully putting documents before the Panel that were not before the bankruptcy court when it entered the Conversion Order, such as Rule 2004 motions and transcripts. It is true that these documents were not before the bankruptcy court at that time. However, the transcripts were before the court when it ruled on KGE's motion to reconsider, and the Rule 2004 motions had been filed prior to the reconsideration hearing. Accordingly, we DENY KGE's request not to consider these documents. In any event, the Rule 2004 motions have no bearing on the outcome of this appeal.

[11] KGE's opening brief spends much time on matters that no longer have any relevance. For instance, KGE continues to argue that no order was necessary under § 363 to sell the Property and that all estate property vested in KGE once the Confirmation Order was entered. The bankruptcy court agreed with this and did not
continue...

-18-

KGE contends it was denied due process when the bankruptcy court sua sponte converted the case to chapter 7 without sufficient notice and opportunity to be heard. KGE argues that, at the very least, the court should have continued the hearing on the Final Decree Motion to allow the parties to brief the issues on conversion.

Although not apparently disputed by KGE, the bankruptcy court can convert a case sua sponte under § 105(a)[12] if cause exists to do so. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 771 (9th Cir. 2008)(bankruptcy court has authority to sua sponte dismiss or convert a case on its own motion under § 105(a)); Tennant v. Rojas (In re Tennant), 318 B.R. 860, 869 (9th Cir. BAP 2004); YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC), 505 B.R. 289, 302 (S.D. Cal. 2014). However, even though the court can rely on § 105(a) for sua sponte conversion of a case, it must afford the debtor sufficient notice and opportunity to be heard. "If the notice is inadequate, then the

[11]...continue
convert the case on these grounds. KGE also contends the objecting parties never timely moved to revoke the Confirmation Order under § 1144, and so they cannot collaterally attack it now. This was conceded and never at issue. Finally, KGE continues to contend that Mostafa's claim was crammed down, which no one has ever disputed; this also was not a stated basis for conversion.

[12] Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

-19-

order is void." GMAC Mortg. Corp. v. Salisbury (In re Loloee), 241 B.R. 655, 661 (9th Cir. BAP 1999).

Section 1112(b)(1) provides that only "on request of a party in interest, and after notice and a hearing" may a case be converted or dismissed. The Code provides guidance as to the appropriate requirements:

(1) "after notice and a hearing", or a similar phrase —

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if —

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

11 U.S.C. § 102(1). The "notice and hearing" definition in § 102 is flexible and sensitive to context. Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 603 (9th Cir. 2006); In re Tennant, 318 B.R. at 870. "The essential point is that the court should give counsel a meaningful opportunity to be heard." In re Eliapo, 468 F.3d at 603 (citation omitted; emphasis in original).

In addition to the statutory requirement of notice, a constitutional requirement of due process also applies. Great Pac. Money Mkts., Inc. v. Krueger (In re Krueger), 88 B.R. 238, 241 (9th Cir. BAP 1988). To meet the requirements of due process, notice must be "reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their

-20-

objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In other words, we must determine whether the notice given to KGE was "reasonably calculated" to give it a meaningful opportunity to oppose the conversion if it so desired. We conclude that it was.

Undisputedly, the bankruptcy court did not give express notice in its tentative ruling issued prior to the hearing on the Final Decree Motion that it was considering conversion. However, EM Trust had argued in its brief in opposition to the Final Decree Motion that the case should be converted to chapter 7 to protect creditors from Kenny's alleged fraud. KGE had an opportunity to brief the conversion issue in its reply but did not do so. At the August 14 hearing on the Final Decree Motion, both EM Trust and Mostafa suggested the case be converted. Local Bankruptcy Rule 3020-1(c) for the Central District of California provides that "failure to file timely the required [post-confirmation] reports is cause for dismissal or conversion to a case under chapter 7 pursuant to 11 U.S.C. § 1112(b)." KGE did not file its Post-Confirmation Status Report due on May 8, 2014, until July 9, 2014, thereby potentially subjecting the case to conversion or dismissal. For these reasons, KGE had at least "reasonably calculated" notice that conversion could be a possibility. Douglas, KGE's counsel, neither raised objections nor requested a continuance when the bankruptcy court announced at the August 14 hearing that it was converting the case.

In addition, and more importantly, KGE was given a full opportunity to present any argument against conversion in its later motion to reconsider. KGE fully briefed the issues, filed a

-21-

reply and presented extensive oral argument at the related hearing. Accordingly, we conclude the bankruptcy court afforded KGE notice and opportunity to be heard that satisfied due process requirements.

In any event, even if the bankruptcy court failed to provide KGE with sufficient notice and opportunity to be heard, KGE has failed to show that it was prejudiced by the court's deficient procedures. To reverse based on a due process violation, we must conclude the appellant was prejudiced. See In re Rosson, 545 F.3d at 777 ("Because there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency. We hold that the bankruptcy court did not abuse its discretion in denying the motion to dismiss and converting the case to Chapter 7."); City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.), 22 F.3d 954, 959 (9th Cir. 1994)(rejecting due process claim for lack of prejudice where debtor could not show that any different or additional arguments would have been presented if the bankruptcy court had timely approved petition for new counsel).

KGE never identified evidence or argument that it would have presented to the bankruptcy court given more time. Thus, it failed to establish that it possessed additional argument or evidence that required, or even supported, a decision in its favor. Indeed, the bankruptcy court's tentative ruling on the motion to reconsider that it was "even more convinced" based on the evidence "that immediate placement of a fiduciary" was "absolutely necessary," indicates any such notice would have been

-22-

futile. Thus, any potential due process error committed by the bankruptcy court was harmless in light of KGE's inability to show prejudice. In re Rosson, 545 F.3d at 776 (citing Rule 9005 and Civil Rule 61); In re City Equities Anaheim, Ltd., 22 F.3d at 959.

**B. The bankruptcy court did not abuse its discretion in converting the case to chapter 7.**

KGE contends that no cause existed to convert its case to chapter 7. Namely, KGE contends that no facts supported conversion under § 1112(b)(4)(L), (M), (N) or (O).[13] At the hearing on the Final Decree Motion, the bankruptcy court did not precisely articulate under what paragraph of § 1112(b) it was converting the case; the Conversion Order (drafted by Trustee's counsel) is also silent on the matter. However, based on the court's statements at the hearing about the Plan not calling for a liquidation and its question to Douglas about whether a sale was contemplated, to which she replied "no," it seems clear the bankruptcy court converted the case based on a material default under § 1112(b)(4)(N).

Section 1112(b)(4) lists sixteen specific factors that constitute "cause" for dismissal or conversion. Cause includes "material default by the debtor with respect to a confirmed plan." 11 U.S.C. § 1112(b)(4)(N). However, these factors are not exhaustive. See In re Consol. Pioneer Mortg. Entities, 248 B.R. at 375. Indeed, bankruptcy courts enjoy wide latitude in

---

[13] The bankruptcy court never indicated that it converted the case under § 1112(b)(4)(L) [revocation of a confirmation order] or (O) [termination of a confirmed plan by reason of the occurrence of condition specified in the plan]. Therefore, we do not address these issues.

-23-

determining whether the facts of a particular case constitute cause for conversion or dismissal under § 1112(b). See Greenfield Drive Storage Park v. Cal. Para-Prof'l Servs., Inc. (In re Greenfield Drive Storage Park), 207 B.R. 913, 916 (9th Cir. BAP 1997).

The parties have not cited any cases either supporting or disputing the bankruptcy court's decision to convert the case based on what it considered was a material default — the sale of the asset intended to fund Plan payments, which was not contemplated in the Plan. We, however, located a case that is directly on point with the circumstances presented here. See In re Mobile Freezers, Inc., 146 B.R. 1000 (S.D. Ala. 1992), aff'd, 14 F.3d 57 (11th Cir. 1994).

After confirming a chapter 11 plan over the dissent of the unsecured creditors, the debtor in Mobile Freezers filed a motion to sell all of its assets and pay creditors pursuant to the plan. Id. at 1002. The United States Trustee objected to the sale and moved to convert the case to chapter 7. Id. at 1002, 1005. The bankruptcy court denied the motion to convert, approved the sale motion and ordered that the sale proceeds be placed into escrow. Id. at 1004. The district court reversed and the Eleventh Circuit affirmed.

The bankruptcy court had determined that while "technically" the plan was in default because it did not contemplate a sale of the assets, the default was excused because debtor proposed to make the payments specified by the plan. Id. at 1004-05. The district court disagreed with the bankruptcy court's "no harm no foul" approach. It reasoned that the asset sale clearly

-24-

contradicted the terms of the plan and was therefore a material breach. Id. at 1005. The disclosure statement provided that debtor would continue operations and retain title to the assets. By selling the assets, debtor was doing neither of these things, and it thwarted the essential purpose of the chapter 11 plan. As a result, debtor was in material default of the plan. Id. (applying former § 1112(b)(8), which is identical to § 1112(b)(4)(N)).

While the outcome may not be the same in all situations, given the facts in this appeal, we believe the district court's reasoning in In re Mobile Freezers applies here. KGE's Plan stated that it was a "reorganizing plan" and that plan payments would come from rental income derived "from the continued operation of the Hillsborough Property as a residential real property." The Plan, as conceded by KGE's counsel, did not contemplate the sale of the Property — its only income-generating asset. While Section V. of the Plan is entitled "Sale or Transfer of Property; Assumption of Contracts and Leases; Other Provisions," no representations were made in that section or any other (or in the disclosure statement) that a sale might occur. The Confirmation Order also states that a liquidation was unlikely, which is what precisely occurred here. Contrary to KGE's position, the Plan did not provide for the sale of its only asset and the payment of claims out of any sale proceeds. Thus, the sale of the Property contradicted the terms of the Plan, thwarted its essential purpose of reorganization and constituted a material default with respect to the confirmed Plan under § 1112(b)(4)(N). In re Mobile Freezers, Inc., 146 B.R. at

-25-

1004-05. Further, KGE cannot argue that the default was not material, it neither utilized sale proceeds to pay all its creditors to the extent required by the Plan nor sequestered funds sufficient for this purpose.

Section 1112(b) requires the bankruptcy court to engage in a two-step analysis. Woods v. Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 729 (9th Cir. BAP 2008). First, the court must determine if "cause" exists for conversion or dismissal. Id. If so, then the court must determine which remedy, conversion or dismissal, better serves the interests of the creditors and the estate. Id. Even though the bankruptcy court's findings were not clearly erroneous, nothing in the record indicates that it considered dismissing KGE's case as an alternative to conversion. Nonetheless, we decline to reverse the Conversion Order on this ground. KGE never argued that the bankruptcy court should have considered dismissal as an alternative remedy. It also has not raised this argument on appeal. Indeed, KGE would like the chapter 11 case to be reinstated so that it can seek the entry of a final decree and discharge. It could not obtain either if the case were dismissed. Consequently, KGE has forfeited any argument regarding the bankruptcy court not considering dismissal as an alternative to conversion. See O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1063 n.3 (9th Cir. 2007)(holding that arguments not raised before the trial court are waived).

Finally, KGE questions the bankruptcy court's authority to issue the TRO to prevent transfer of the sale proceeds, which apparently occurred despite the order. KGE argues that injunctive relief could only be issued in a pending adversary proceeding per

-26-

Rule 7001(7). Trustee has moved to dismiss this issue on appeal as moot and unripe. We disagree that the issue is moot or unripe, and we decline to grant Trustee's motion. In any event, the issuance of the TRO made no difference in this case. Local Bankruptcy Rule 3020-1(b)(5), which no party cited, provides:

> Unless otherwise provided in the plan, if the above-referenced case [a chapter 11 case] is converted to one under chapter 7, <u>the property of the reorganized debtor shall be revested in the chapter 7 estate</u>[.] (Emphasis added).

No provision was made in the Plan for anything other than this default rule. Accordingly, KGE's assets became property of the chapter 7 estate upon conversion of the case. Thus, a TRO was not necessary, as KGE and its insiders were already prohibited from transferring any of KGE's assets, including the sale proceeds. Even the bankruptcy court intimated at the August 14 hearing that this was "already the law." At best, any potential error here was harmless.

Accordingly, we conclude the bankruptcy court did not abuse its discretion in converting KGE's case to chapter 7. It follows, therefore, that the court did not err by denying the Final Decree Motion. The Plan was not fully administered and KGE was not entitled to a discharge.

**C.    The bankruptcy court did not abuse its discretion in denying reconsideration of the Conversion Order.**

The bankruptcy court determined that KGE was not entitled to reconsideration of the Conversion Order under either Civil Rule 59 or 60. Unfortunately, the court's findings are brief, but we believe they are sufficient to allow for review.

-27-

**1. Reconsideration under Civil Rule 59(e)**

Because the motion to reconsider was filed within 14 days of entry of the Conversion Order, it could be treated as a motion to alter or amend under Civil Rule 59(e). Heritage Pac. Fin., LLC v. Edgar (In re Montano), 501 B.R. 96, 112 (9th Cir. BAP 2013). A motion under Civil Rule 59(e) should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error or if there is an intervening change in the controlling law. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009); Jeffries v. Carlson (In re Jeffries), 468 B.R. 373, 380 (9th Cir. BAP 2012).

In its motion to reconsider, KGE did not present any newly discovered evidence or claim any intervening change in the law. KGE contends the bankruptcy court made "errors of law and fact" on which the Conversion Order was based and therefore the motion to reconsider should have been granted. KGE does not articulate precisely what these "errors of law and fact" were. However, in its reply brief, KGE clarifies. KGE contends the Conversion Order was entered solely because KGE sold the Property without court authorization, which was an error of law. Again, the bankruptcy court agreed that a § 363 order was not required for the sale and that lack of such an order was not the basis for conversion. The bankruptcy court entered the Conversion Order because the sale of the Property was not contemplated in the Plan. This conclusion was not an error of law.

Further, Trustee's evidence presented in opposition to the motion to reconsider and statements made by the parties at the

-28-

related hearing revealed that KGE had not paid all creditors under the Plan as claimed. With only $257.29 remaining in KGE's DIP account on August 14, 2013, it was clear that an insufficient amount of funds had been set aside for Mostafa's approximate $3,000 claim and that KGE did not have the ability to fund the monthly payments to the FTB as the FTB allegedly requested. Moreover, none of the checks written for unsecured creditors in February 2013 or for the alleged balloon payments made to them following the March 26 sale had cleared KGE's DIP account as of August 2013. A mere $257.29 could never cover those payments once the checks, presuming they were even sent, were presented. Obviously, as noted by the bankruptcy court, KGE had no intention of fulfilling its duties under the Plan.

Accordingly, even if the sale of the Property was not a material default under § 1112(b)(4)(N) constituting cause for conversion, KGE's failure to pay creditors pursuant to the Plan certainly was. AMC Mortg. Co. v. Tenn. Dep't of Revenue (In re AMC Mortg. Co.), 213 F.3d 917, 921 (6th Cir. 2000)(failure to make required plan payment is a material default and is cause for dismissal)(citing Ohio Dep't of Taxation v. H.R.P. Auto Ctr., Inc. (In re H.R.P. Auto Ctr., Inc.), 130 B.R. 247, 256 (Bankr. N.D. Ohio 1991)). Thus, the bankruptcy court did not abuse its discretion in denying KGE relief under Civil Rule 59(e).

**2. Reconsideration under Civil Rule 60(b)(1) and (4)**

Civil Rule 60(b)(1) provides that a court may relieve a party from a final judgment for "(1) mistake, inadvertence, surprise, or excusable neglect." A judgment rendered "in a manner inconsistent with due process of law" is a void judgment within the meaning of

-29-

Civil Rule 60(b)(4). Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440, 1448 (9th Cir. 1985); In re Loloee, 241 B.R. at 660-61.

KGE contends that because it was in full compliance with the terms of the Plan and UST reporting requirements, it had no basis to believe the bankruptcy court would sua sponte convert its case at the hearing on the Final Decree Motion. KGE argues it was denied due process in that it was denied the opportunity for a hearing on a motion to convert or to present evidence and relevant law demonstrating that it had not engaged in any conduct warranting conversion. Whether KGE was entirely "surprised" that conversion might be a possibility is questionable based on the record. EM Trust had raised the issue in its opposition to the Final Decree Motion. Further, KGE knew it had not complied with its post-confirmation reporting requirements, which can constitute cause for conversion under the local rules. Finally, for KGE to contend that it was in full compliance with the Plan at this point is simply disingenuous.

Had KGE appealed the Conversion Order without filing a motion to reconsider, its arguments may have some merit. Nonetheless, and contrary to KGE's assertion, the bankruptcy court did in fact reconsider the conversion ruling. It considered the merits of KGE's motion, the evidence it presented in support and counsel's argument at the related hearing. Thus, the bankruptcy court did provide KGE a meaningful opportunity to be heard on the merits. It simply was not convinced that KGE was not in material default of the Plan and that the case was improperly converted to chapter 7. Accordingly, the bankruptcy court did not abuse its

discretion in denying KGE relief under Civil Rule 60(b)(1) or (4).

**3.    Reconsideration under Civil Rule 60(b)(2), (3) and (6)**

Civil Rule 60(b)(2) provides relief from a judgment or order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under [Civil] Rule 59(b)."  We are hard-pressed to figure out why KGE sought relief on this basis, as it did file its motion to reconsider within the 14 days required under Civil Rule 59.  In any event, the only argument KGE raises here is that it was not provided with an opportunity to present evidence on a motion to convert, which we have already rejected.

To secure relief under Civil Rule 60(b)(3), a party must establish:  (1) by clear and convincing evidence that the court's order was obtained through the fraud, misrepresentation, or other misconduct of the movant's opponent; and (2) that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense. <u>Jones v. Aero/Chem Corp.</u>, 921 F.2d 875, 878 (9th Cir. 1990).  KGE contends Mostafa and EM Trust made untruthful allegations at the hearing on the Final Decree Motion about KGE's alleged bad faith.  KGE fails to say what these "untruthful" allegations were or to show that these allegations are what procured the Conversion Order, and it fails to identify how the bankruptcy court erred when it determined that no fraud occurred in this case, except perhaps for debtor's.  To the extent KGE contends EM Trust misrepresented at the August 14 hearing that it was a creditor, EM Trust's status was not the basis for the court's entry of the Conversion Order.  Further, counsel for KGE was present at that hearing and had the

-31-

opportunity to defend against any allegedly untruthful statements made by the objecting parties.

Finally, Civil Rule 60(b)(6) provides for relief from a judgment or order based on "any other reason that justifies relief." This "catch-all" provision applies only when the reason for granting relief is not covered by any of the other reasons set forth in Civil Rule 60. Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1168 & n.8 (9th Cir. 2002). It is to be used sparingly as an equitable remedy to prevent manifest injustice and should be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment. United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993). A party seeking relief from a judgment under Civil Rule 60(b)(6) must demonstrate both injury and circumstances beyond its control that prevented it from proceeding with the prosecution or defense of the action in a proper fashion. Cmty. Dental Servs., 282 F.2d at 1168.

Other than asserting that relief was appropriate under Civil Rule 60(b)(6), KGE's opening brief fails to present any supporting argument as to why it was entitled to such relief or how the bankruptcy court abused its discretion by not granting it. As a result, this issue has been abandoned. City of Emeryville v. Robinson, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010)(appellate court in this circuit "will not review issues which are not argued specifically and distinctly in a party's opening brief, especially when a host of other issues are raised"). To the extent KGE raises a due process argument in its reply brief, we reject it for the same reasons stated above.

Accordingly, the bankruptcy court did not abuse its discretion in denying KGE relief under Civil Rule 60(b)(2), (3) or (6).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.